UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS K. LEE,

                Plaintiff,

v.                                   **DECISION AND ORDER**
                                            11-CV-133S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

        1.       Plaintiff challenges an Administrative Law Judge's ("ALJ") decision, dated September 25, 2009, wherein the ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614 (a)(3)(A) of the Social Security Act. Plaintiff alleges that he became disabled on July 1, 2007.[1] He contends that the ALJ's determination is not based upon substantial evidence, and reversal is warranted.

        2.       On August 27, 2009, the ALJ held a hearing at which Plaintiff testified. After consideration of the evidence, including Plaintiff's hearing testimony and his medical records, the ALJ denied Plaintiff's application for disability benefits and supplemental security income. On December 13, 2010, the Appeals Council denied Plaintiff's request for review, and adhered to that denial on January 21, 2011 following a request for review based upon additional information. Plaintiff filed the current civil action challenging Defendant's final decision in this Court on February 11, 2011.

        3.       Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule

---

[1] Plaintiff's initial application for benefits asserted an onset date of October 1, 2004, which was later amended at the hearing by Plaintiff to July 1, 2007 (R. 12, 28-29).

1

12(c) of the Federal Rules of Civil Procedure on September 14, 2011, and Plaintiff responded with a Cross-Motion for the same relief on September 30, 2011.  This Court finds the matter fully briefed and oral argument unnecessary.  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

    4.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert denied 459 U.S. 1212 (1983).

    5.    "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the onset date of his alleged disability (R.[2] 14); (2) Plaintiff's severe impairments are heart disease, back disorder, liver problems, shortness of breath, carpal tunnel syndrome, seizures, depression, and drug and alcohol issues (R. 14); (3) Plaintiff nonetheless did not have an impairment or combinations of impairments that met or medically equaled a disabling impairment under the regulations (R. 15); (4) Plaintiff retained the residual functional capacity to perform light work with certain specifications[3] (R. 16); (5) Plaintiff is

---

[2] Citations to the administrative record are designated as "R."

[3] The ALJ noted specifically that Plaintiff could "lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for up to four hours in an eight-hour workday. Sitting is limited to six hours in an eight-hour workday. Mentally, [Plaintiff] is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for tasks, maintain a regular schedule and learn simple tasks. He could have mild to moderate difficulty performing complex tasks independently, relating adequately with others and appropriately deal with

unable to perform his past relevant work, he was able to perform unskilled light work, of which there were a significant number of jobs in the national economy (R. 22-23).

10.  Plaintiff argues that ALJ failed to properly evaluate Plaintiff's residual functional capacity by (1) not properly evaluating the opinion evidence or Plaintiff's non-exertional limitaitons; (2) not properly evaluating Plaintiff's credibility; and (3) failing to obtain the opinion of a vocational expert in light of the non-exertional limitations.  Initially, although Plaintiff's severe impairments included heart disease, back disorder, liver problems, shortness of breath, carpal tunnel syndrome, seizures, depression, and drug and alcohol issues, Plaintiff testified that the only impairments that prevented his performing a simple, non-stressful job was back pain, depression, and seizures. (R. 32, 40-41; see 38 (Plaintiff testified that his atrial fibulation had resolved)).

The first non-exertional limitation that Plaintiff argues was not properly considered is Plaintiff's history of seizures. Plaintiff testified that he had nine in the year prior to the hearing, and they were frightening because he could not "tell when they're going to happen." (R. 32-34).  He initially testified that he could not drive because of the seizures, subsequently clarified that his license had not been taken away, but Dr. Pilcher requested that he not drive, and finally testified that he had driven three weeks prior to the hearing. (R. 32-33, 38).  Despite Plaintiff's testimony that of nine seizures in the year prior to the hearing in August 2009, the medical records reflect approximately seven reported instances between the onset of seizures in October 2007 and April 2009, two of which were only spells of mild confusion and not full seizures. (R. 446, 448, 475, 557, 584, 586, 588, 592, 646). Plaintiff highlights that a consultative physician opined that Plaintiff "should

---

stress."

not work from heights or operate heavy machinery because of the seizure which occurred two months ago." (R. 477). This opinion was rendered in December 2007, and that physician specifically stated that this "should be re-evaluated in several months time." (R. 477). Further, Plaintiff testified that his current seizure medication "seems to be helpful" in preventing a full seizure. (33; see 678 (Plaintiff reported in July 2009 that he had no grand mal seizures in the two months since he started on Kempra)). In light of the evidence from both Plaintiff's treating physician and Plaintiff himself that Plaintiff was responding well to seizure medication in the years following that initial December 2007 opinion, the ALJ's determination that the seizures did not constitute a significant non-exertional limitation is supported by substantial evidence.

Similarly, although there is no dispute that Plaintiff suffers from depression, the record also supports the ALJ's determination that this was not a non-exertional limitation on Plaintiff's ability to perform light work. Plaintiff argues that the ALJ, despite noting a low Global Assessment Functioning ("GAF") score of 50, improperly categorized Plaintiff's psychiatric symptoms as indicative of moderate rather than serious symptoms with regard to social or occupational functioning.[4] (R. 20-21). The findings of both consultive and treating psychiatrists and psychologist support the ALJ's conclusion. Both a consultative psychologist and consultative psychiatrist opined after a 2008 examination that Plaintiff had mild to moderate symptoms associated with his major depressive disorder. (R. 478-481, 482, 494). It was further found that Plaintiff could understand simple instructions and

---

[4]"GAF is a scale that indicates the clinician's overall opinion of an individual's psychological, social, and occupational functioning." Petrie v. Astrue, 412 Fed Appx 401, 406 n 2 (2d Cir. 2011). According to the Diagnostic and Statistical Manual of Mental Disorders, relied on by the ALJ, a GAF range of 41 to 50 is indicative of a serious impairment in social, occupational or school functioning, whereas a score in the 51 to 60 range indicates only moderate symptoms. see Petrie, 412 Fed Appx at 406 n 2; Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).

perform simple tasks independently, maintain attention for such tasks, maintain a regular schedule, and that he would have only mild to moderate difficulty performing complex tasks. (R. 481, 496). He also could relate "adequately with others and appropriately deal[] with stress." (R. 481, 496). The consultative psychiatrist found that the evidence did not establish there was more than a minimal limitation of the ability to do basic work. (R. 495-496). Plaintiff's treating psychiatrist[5] rated Plaintiff's current GAF as 50 in March 2009, however, he also specifically described Plaintiff's symptoms as mild to moderate. (R. 679). Thus, there is nothing in Dr. Racaniello's treatment plan that controverts the findings of the consultative doctors. Finally, Plaintiff highlights that he was admitted to a medical center in October 2008 with a GAF of 40 (R. 688, 693), but fails to mention that his GAF was 70 upon his discharge approximately a month later, indicating only some mild symptoms. (R. 689; see Petrie v. Astrue, 412 Fed Appx 401, 406 n 2 (2d Cir. 2011). At that time, Plaintiff himself reported "a full resolution of his depressive symptoms" within a week of finding an appropriate medication dosage. (R. 688).

Plaintiff further argues that the ALJ failed to properly consider his back pain as an impairment. As Defendant notes, however, neither the consultative nor treating physicians assessed any limitations that would preclude Plaintiff from performing light work, and instead consistently noted Plaintiff's normal gait, stance, and full muscle strength in all extremities (R. 460-464, 475-477, 584-595). Instead, the consultative physician opined that Plaintiff had only a mild limitation of bending and lifting due to low back pain, a factor the ALJ found relevant in his conclusion. (R. 16, 477). Further, Plaintiff responded

---

[5]Although it says 'consultive psychiatrist' under Dr. Racaniello's signature line, he was assisting in the preparation of a clinical treatment plan for Plaintiff rather than conducting an independent evaluation for disability purposes. (R. 679-681).

favorably to medication for back pain. (R. 585).

Because the above conclusions are supported by substantial evidence, this Court rejects both Plaintiff's argument that the ALJ improperly evaluated Plaintiff's credibility and the argument that the ALJ failed to adequately consider non-exertional limitations. Plaintiff's argument that the ALJ erred in failing to procure the testimony of a vocational expert is also without merit. "[T]he necessity for expert testimony must be determined on a case-by-case basis. If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986). Here, the ALJ determined that Plaintiff had the residual functional capacity to perform light work and:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for up to four hours in an eight-hour workday. Sitting is limited to six hours in an eight-hour workday. Mentally, [Plaintiff] is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for tasks, maintain a regular schedule and learn simple tasks. He could have mild to moderate difficulty performing complex tasks independently, relating adequately with other and appropriately deal with stress.

(R. 16). This tracks with the definition of light work, which requires that a plaintiff be able to "substantially" perform all of the following: lift no more than 20 pounds with frequent lifting and carrying of objects weighing up to 10 pounds, a good deal of walking or sitting most of the time with some push and pull of the arms or legs. (20 C.F.R. § 404.1567 (b)). As concluded above, the non-exertional limitations do not significantly diminish Plaintiff's work capacity, Bapp, 802 F.2d at 806, and therefore the ALJ did not err in finding the guidelines determinative of Plaintiff's non-disabled status.

11.     For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Cross-Motion for Judgment on the Pleadings is

denied.

    IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

    FURTHER, that Plaintiff's Cross-Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

    FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

    SO ORDERED.

Dated: March 28, 2012
       Buffalo, New York

                              /s/William M. Skretny
                            WILLIAM M. SKRETNY
                                 Chief Judge
                           United States District Court